PEOPLE v DILLARD

Docket No. 313396. Submitted November 14, 2013, at Lansing. Decided December 10, 2013, at 9:10 a.m. Leave to appeal sought.

An Ingham Circuit Court jury convicted Shylon L. Dillard of assault with intent to do great bodily harm less than murder, MCL 750.84, resisting and obstructing a police officer, MCL 750.81d, and falsely reporting a felony, MCL 750.411a(1)(b). The court, Rosemarie E. Aquilina, J., sentenced defendant as a third-offense habitual offender to concurrent terms of imprisonment of 114 months to 20 years for the assault conviction, 32 months to 4 years for the conviction of resisting and obstructing, and 36 months to 8 years for the false-reporting conviction. Defendant appealed, challenging only his assault conviction and the corresponding sentence.

The Court of Appeals *held*:

1. Defendant contended that the evidence only proved an aggravated assault, MCL 750.81a(1), without any intent to commit murder or inflict great bodily harm less than murder. Circumstantial evidence and reasonable inferences arising from that evidence may be sufficient to prove the elements of a crime, and intent may be inferred from a defendant's use of physical violence. Assault with intent to commit great bodily harm less than murder requires proof of (1) an attempt or threat with force or violence to do corporal harm to another (an assault) and (2) an intent to do great bodily harm less than murder. The assault element need only fit the traditional definition of an assault, which is an attempt or offer with force and violence to do a corporal hurt to another. Consequently, it is not necessary that any actual injury occur. Any injury that a defendant does inflict is not necessarily proof of any intent beyond that necessary to inflict the particular injury, but the extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury. In fact, the injury actually inflicted need not be an injury specifically intended, but it can nevertheless be strongly probative of the intent to cause the requisite quantum of harm.

2. The evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant acted with the requisite specific intent to support a conviction of assault with intent to do great

bodily harm less than murder. During the confrontation between defendant and the victim, he choked the victim in an attempt to retrieve her phone, chased her, pulled her to the ground many times, dragged her across his driveway, choked her again, and covered her mouth to prevent her screams from being heard. The jury could have properly viewed all of this as circumstantial evidence sufficient to find that defendant had the specific intent to inflict great bodily harm. The fact that the victim suffered extensive injuries and the evidence that defendant apparently ceased his assault only because he feared that it had been detected by someone else amply supported the jury's finding.

3. The trial court did not err when it assessed 15 points for Offense Variable (OV) 8 of the sentencing guidelines. MCL 777.38(1)(a) requires that score for OV 8 (asportation of victim) if a victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense. To establish asportation, the movement of the victim cannot be incidental to committing an underlying offense. Asportation does not require force. In fact, asportation for purposes of OV 8 can occur even when the victim voluntarily accompanies the defendant to a place or situation of greater danger. A place of greater danger includes an isolated location where criminal activities might avoid detection. The victim agreed to go into defendant's apartment following a series of assaults. She initially played along with defendant's story that they had been mugged, but requested an ambulance specifically to escape from defendant. When the police arrived, the victim was relieved that defendant wasn't going to be able to hurt her any more, and she told the police what had really happened when she got to the ambulance because only then did she feel safe. Furthermore, under the circumstances of the immediately preceding assault, the strong implication was that the victim was not free to go anywhere other than into the apartment with defendant, a place that would have been more isolated from the possibility of further assaults being detected. That no additional assaults occurred in the apartment was irrelevant.

4. The trial court did not err when it assessed 10 points for OV 10. MCL 777.40(1)(b) requires that score for OV 10 (exploitation of a vulnerable victim) if the defendant exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship or the defendant abused his or her authority status. Under MCL 777.40(2)(b), "exploit" means to manipulate a victim for selfish or unethical purposes. In addition, exploitation requires that the victim actually have been vulnerable. The victim in this

case was clearly vulnerable in light of defendant's greater strength, her intoxication, and the domestic relationship between the two, including the fact that she and defendant had a child together. Defendant unambiguously exploited his greater strength and the relationship. Both circumstances ensured that the victim had no meaningful way to escape from him until the police intervened.

Affirmed.

1. CRIMINAL LAW — ASSAULT WITH INTENT TO COMMIT GREAT BODILY HARM LESS THAN MURDER — INJURIES TO VICTIMS.

Assault with intent to commit great bodily harm less than murder requires proof of (1) an attempt or threat with force or violence to do corporal harm to another (an assault) and (2) an intent to do great bodily harm less than murder; the assault element need only fit the traditional definition of an assault, which is an attempt or offer with force and violence to do a corporal hurt to another, and intent may be inferred from the defendant's use of physical violence; it is not necessary that any actual injury occur; an injury that the defendant inflicts is not necessarily proof of any intent beyond that necessary to inflict the particular injury, but the extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury; the injury actually inflicted need not be an injury specifically intended, but it can be strongly probative of the intent to cause the requisite quantum of harm (MCL 750.84).

2. SENTENCING GUIDELINES — OFFENSE VARIABLE 8 — ASPORTATION OF THE VICTIM.

Offense Variable (OV) 8 (asportation of victim) requires that the sentencing court assess 15 points when scoring the sentencing guidelines if a victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense; to establish asportation, the movement of the victim cannot be incidental to committing an underlying offense; asportation does not require force and can occur even when the victim voluntarily accompanies the defendant to a place or situation of greater danger; a place of greater danger includes an isolated location where criminal activities might avoid detection (MCL 777.38(1)(a)).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Stuart J. Dunnings III*, Prosecuting

Attorney, and *Joseph B. Finnerty*, Assistant Prosecuting Attorney, for the people.

*Michael A. Faraone, P.C.* (by *Michael A. Faraone*) for defendant.

Before: WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. A jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84, resisting and obstructing a police officer, MCL 750.81d, and falsely reporting a felony, MCL 750.411a(1)(b). He was sentenced as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of imprisonment of 114 months to 20 years for the assault conviction, 32 months to 4 years for the resisting-or-obstructing conviction, and 36 months to 8 years for the false-reporting conviction. He appeals by right his assault conviction and sentence only.[1] We affirm.

The victim in this case was defendant's girlfriend at the time. On the night these crimes occurred, the two spent some time at a strip club, drinking alcohol and using drugs. Defendant drove them to his apartment in the victim's car. During the trip, they had an argument concerning the victim's phone. According to the victim, defendant was angry and wanted to check which male friends the victim had on a social networking Internet site. According to defendant, he grabbed the victim's phone because the victim first took his phone. They agreed that defendant held the victim down by her neck, although defendant characterized this as "restraining" rather than strangulation.

---

[1] Defendant does not appeal his convictions of resisting and obstructing a police officer and falsely reporting a felony.

The victim testified that defendant initially would not allow her out of the car until she gave him her phone, but he eventually let her out, at which time the victim attempted to run away. The victim testified that defendant grabbed her by her hair, pulled her down, and put his hand over her mouth to keep her from screaming for help. Defendant contended that the victim fell on her own and was "acting real hysterical" when he tried to help her up. The victim testified that she was able to free herself, but defendant pulled her back to the ground and placed his hands over her mouth, preventing her from breathing, and punched her in the face. She was able to free herself a third time and tried to run, but defendant again caught her and knocked her down, then began dragging her into his apartment. She testified that the assault ended only because defendant feared that someone had heard her screaming, at which point she agreed to go into his apartment with defendant so he would "leave me alone and stop hurting me." Defendant agreed that the victim managed to get up and run, but stated that he tried to help her and covered her mouth because it was four in the morning and the neighbors were trying to sleep. Defendant admitted that he hit her in the nose after she bit his finger and that the third time the victim ran away, he grabbed her by her hair and pulled her down, but he asserted that it was in an attempt to stop her before she hurt herself.

A neighbor called 911. Police officers who responded to the area saw women's boots and a change purse strewn about. The victim answered the door when they knocked; they described her as disheveled, crying, and having abrasions and visible blood on her body and messy hair. Defendant told police that he and the victim had been mugged by two men, one carrying a handgun. The victim later testified that defendant had told her that they needed to tell the police that they had been robbed. She

initially went along with the robbery story, but she requested an ambulance to get away from defendant. At the ambulance, she began crying and said that defendant had inflicted her injuries and that they had not been robbed. She later testified that she was relieved to be able to escape. Defendant was arrested, and the victim was taken to a hospital. The victim's injuries included "multiple abrasions, especially to the face," bruising, swelling, and blood around the nose, a nasal bone fracture, and minor closed head injury; she was also observed by the police to have popped blood vessels in her left eye, which would be consistent with strangulation.

Defendant first argues that his conviction of assault with intent to do great bodily harm less than murder is not supported by sufficient evidence because the evidence did not prove beyond a reasonable doubt that he acted with the requisite specific intent. We disagree.

We review de novo a claim of insufficient evidence, viewing the evidence in the light most favorable to the prosecution to determine whether the essential elements of the charged offense could have been found proved beyond a reasonable doubt. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008); *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime." *People v Lugo*, 214 Mich App 699, 710; 542 NW2d 921 (1995). Intent may be inferred from a defendant's use of physical violence. See, e.g., *People v James*, 267 Mich App 675, 677-678; 705 NW2d 724 (2005); *People v Peña*, 224 Mich App 650, 659-660; 569 NW2d 871 (1997), mod in part on other grounds, 457 Mich 885 (1998).

"Assault with intent to commit great bodily harm less than murder requires proof of (1) an attempt or threat

with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). Notably, the "assault" element of assault with intent to commit great bodily harm less than murder need only fit the traditional definition of an assault, which "is usually defined as an attempt or offer with force and violence to do a corporal hurt to another." *People v Smith*, 217 Mich 669, 673; 187 NW 304 (1922). Consequently, it is not necessary for any actual injury to occur. Furthermore, any injury that a defendant does inflict is not *necessarily* proof of any intent beyond that necessary to inflict the particular injury. *Id.* at 674. However, the extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury. *People v Resh*, 107 Mich 251, 253-254; 65 NW 99 (1895). Indeed, the injury actually inflicted need not be an injury specifically intended, but it can nevertheless be strongly probative of the intent to cause the requisite quantum of harm. See *People v Miller*, 91 Mich 639, 642-645; 52 NW 65 (1892).

Defendant contends that the evidence only proved an aggravated assault, MCL 750.81a(1), without any intent to commit murder or inflict great bodily harm less than murder. The jury would, of course, have been within its rights to choose to believe defendant's version of the events. However, defendant initially choked the victim in an attempt to retrieve her phone. There was evidence that after this confrontation, defendant chased the victim, pulled her to the ground multiple times, dragged her across his driveway, choked her, and covered her mouth to prevent her screams from being heard. The jury could properly have viewed this as circumstantial evidence sufficient to find that defendant had the specific intent to inflict great bodily harm.

The fact that the victim did not suffer more or greater injuries than she did disproves nothing, and it is the role of the jury, not this Court, to weigh the evidence. The fact that the victim suffered extensive injuries and evidence that defendant apparently ceased his assault only because he feared that it had been detected by someone else amply support the jury's finding that defendant intended to cause the victim great bodily harm less than murder.

Defendant also challenges the scoring of two offense variables (OVs). This Court reviews de novo questions of statutory interpretation and whether facts satisfy the legal requirements of any statute governing the scoring of the sentencing guidelines, and this Court reviews for clear error a trial court's factual determinations that those requirements are supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 8 requires the trial court to assess 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.]" MCL 777.38(1)(a). To establish asportation, the movement of the victim must "not be incidental to committing an underlying offense." *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). Asportation does not require force; asportation for the purpose of OV 8 may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger. *Id.* at 647-648. A place of greater danger includes an isolated location where criminal activities might avoid detection. *Id.* at 648.

Defendant argues that the victim was not held captive for any time beyond the minimum necessary to commit the charged offense and that captivity occurred

in a driveway, which is a less isolated place than the interior of a car. He further argues that the victim accompanied him to his apartment afterwards of her own volition. In the trial court, defendant argued that the apartment was not a place of greater danger because there was no testimony that any further violence took place in the apartment. In fact, when the police arrived, the victim was relieved that defendant "wasn't going to be able to hurt me anymore," but initially played along with defendant's story that they had been mugged. She requested an ambulance specifically to escape from defendant, and she told the police what had really happened when she got to the ambulance because only then did she feel safe. Furthermore, under the circumstances of the immediately preceding assault, the strong implication would have been that the victim was not free to go anywhere other than into the apartment with defendant, a place that would have been more isolated from the possibility of further assaults being detected. That no such additional assaults apparently occurred is not relevant.

OV 10 requires the trial court to assess 10 points if the defendant "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" MCL 777.40(1)(b). "Exploit" is defined as "manipulat[ing] a victim for selfish or unethical purposes." MCL 777.40(2)(b). Further, to be exploited the victim must actually have been vulnerable. *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008). The victim was clearly vulnerable in light of defendant's greater strength, her intoxication, and the domestic relationship between the two, including the fact that she and defendant had a child together. See *id.* at 158-159. Defendant unambiguously exploited his greater strength and his relationship with the victim;

both facts ensured that she had no meaningful way to escape from him until outside intervention by the police occurred. We find no clear error in the trial court's scoring of either OV 8 or OV 10.

Affirmed.

WHITBECK, P.J., and WILDER, J., concurred with RONAYNE KRAUSE, J.