# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 7, 2016

Plaintiff-Appellee,

v

No. 325551
Washtenaw Circuit Court

DAJEON LAVELLE FRANKLIN,

LC No. 14-000181-FC

Defendant-Appellant.

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), two counts of first-degree home invasion, MCL 750.110a(2), conspiracy to commit second-degree home invasion, MCL 750.110a(3), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for his role in a robbery spree and the murder of University of Michigan medical student, Paul DeWolf. Defendant challenges the sufficiency of the evidence supporting that he acted with malice in killing DeWolf, the admission of evidence that defendant possessed a gun on other occasions, and the length of his sentence as cruel and unusual punishment. Although the trial court improperly admitted one unfairly prejudicial photograph, this error did not likely alter the outcome of the trial. We therefore affirm defendant's convictions and sentences.

## I. BACKGROUND

On the night of July 23, 2013, defendant, Joei Jordan, and Shaquille Jones drove from Ypsilanti to an Ann Arbor neighborhood where the homes were divided into smaller units for rent by students. The trio planned to break into houses to steal small, valuable items. The men entered 210 North Ingalls Street through an open window and stole a MacBook laptop and a purse. They then entered the neighboring home, 220 North Ingalls Street, a medical society house that rented individual bedrooms to students. While in the basement stealing a video game system, the men heard one of the bedroom doors open and the resident go inside. Despite knowing that someone was present, defendant and his accomplices decided to enter that bedroom.

When the trio entered the dark bedroom, DeWolf slowly stood up from his bed and repeatedly asked, "Who is there?" No one responded. Defendant moved toward DeWolf holding a handgun in one hand aiming it at the victim. DeWolf reached for defendant or the gun,

-1-

and defendant pulled the gun back. Defendant then hit DeWolf with an overhead swing of the gun and the gun discharged. Jones, Jordan, and defendant ran out of the residence. Defendant told Jones and Jordan that he shot DeWolf because he thought DeWolf had a knife or was grabbing for the gun.

DeWolf died from his gunshot wound. The medical evidence supported that the gun fired while it was sweeping downward. The weapon was in close range to DeWolf's clavicle and the bullet caused severe damage as it travelled downward through his torso and out his middle back. Defendant and his accomplices were apprehended after officers traced the stolen items they sold and secured fingerprint evidence from the two robbery scenes. Officers also discovered dots of DeWolf's blood on the shoes worn by defendant that night.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence that he acted with the necessary malice to support his felony murder conviction. We review such challenges de novo, viewing the evidence "in the light most favorable to the prosecution" to determine whether a rational trier of fact "could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). Our review is deferential to the jury's verdict. We will not interfere with the jury's role of determining the weight of the evidence or assessing the witnesses' credibility. *Id.* at 419. "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

To convict a defendant of felony murder, the prosecution must establish:

(1) the killing of a human being, (2) *with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, [i.e. malice]* (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b). [*People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009) (emphasis added, citations omitted).]

Contrary to defendant's protestations, the prosecution presented sufficient evidence to establish that he acted with malice. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009). Actual intent to kill is not required, "only the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999). Given the difficulty of proving a defendant's state of mind, "minimal circumstantial evidence" will suffice. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). The intent to do great bodily harm may be inferred from the level of physical force and violence employed, the use of a deadly weapon, or the decision to set into motion actions likely to cause death or great bodily harm. See *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999); *People v Dillard*, 303 Mich App 372, 377; 845 NW2d 518 (2013); *People v James*, 267 Mich App 675, 677-678; 705 NW2d 724 (2005).

Viewing the evidence in the light most favorable to the prosecution, the jury could conclude beyond a reasonable doubt that defendant acted with malice. Defendant set out on his robbery spree armed with a loaded handgun. He entered a dark bedroom in the middle of the night knowing that someone was inside and that any robbery would likely involve an element of force. When confronted by the sleepy and surprised resident, defendant decided to raise his loaded handgun overhead and strike the victim with a downward swing. The jury could certainly view these events as constituting "wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Roper*, 286 Mich App at 84.

Defendant alternatively asserts that his felony murder conviction should have been reduced to second-degree murder. Pursuant to MCL 750.316, first-degree murder includes murder committed in the course of a felony and premeditated murder. "All other murders are murders in the second degree." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). The trial court instructed the jury that it could convict defendant of second-degree murder as a lesser included offense of the felony murder charge; the jury declined to do so. We may not interfere with that judgment. *Odom*, 276 Mich App at 419. Moreover, second-degree murder also includes an element of malice and the lack of such intent would not support conviction of this lesser offense. *People v Reese*, 491 Mich 127, 142-143; 815 NW2d 85 (2012).

## III. "OTHER ACTS" EVIDENCE

Defendant challenges the admissibility of certain evidence under MRE 404(b). The challenged evidence includes: (1) a 2009 photograph posted by defendant on Facebook depicting him holding a handgun, (2) the testimony of Dave Pearson and Danielle Hugan that defendant showed them a gun in the summer of 2013, and (3) a text message exchange in which defendant agreed to purchase a gun from Ramone Dabney. Defendant preserved his challenge to the admission of the Facebook photograph by raising a contemporaneous objection. We review for an abuse of discretion a trial court's decision to admit evidence over a party's objection. *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007). We review the remaining unpreserved challenges for plain error affecting defendant's substantial rights. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

MRE 404(b) governs the admission of other act evidence. MRE 404(b)(1) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

When reviewing whether evidence was properly admitted under MRE 404(b), we must consider (1) whether the evidence was "offered for a proper purpose under Rule 404(b)"; (2) whether the evidence was "relevant under Rule 402 as enforced through Rule 104(b)"; (3) whether the evidence's probative value was substantially outweighed by unfair prejudice as provided in MRE 403; and (4) whether the trial court provided "a limiting instruction to the

-3-

jury." *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

The prosecution contends that the witness accounts of personally observing defendant with a handgun around the time of the crime and the text message string regarding the purchase of a handgun before the crime were not precluded by MRE 404(b). This evidence was not offered to establish defendant's propensity to commit the crime, but rather to prove that defendant owned or had access to a handgun around that time, the prosecution asserts. Possession of a handgun was an element of an offense placed before the jury.

"[I]f the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character," as in this case, "Rule 404(b) is not implicated." *Id.* at 64. Indeed, "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts *'other' than the 'conduct at issue in the case'* that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (emphasis added). Therefore, "acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *Id.* Importantly, "[e]vidence of a *defendant's possession of a weapon of the kind used in the offense* with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989) (emphasis added).

Jones testified that defendant carried a black, semi-automatic handgun on the night of the offense and that defendant used this gun to shoot DeWolf. The text message exchange evidenced that before the night of the current offense, defendant intended to (and apparently did) purchase a gun matching Jones's description of the murder weapon. The text message exchange noted that the weapon contained hollow point bullets, and investigating officers found a hollow point bullet jacket fragment at the murder scene. Expert testimony established that the weapon in the text message photograph was of a type that could have fired the fatal bullet. The text message exchange was therefore direct evidence that defendant committed the offense, *Hall*, 433 Mich at 580-581, and its admission did not implicate MRE 404(b). *VanderVliet*, 444 Mich at 64.

Similarly, evidence that Hugan and Pearce saw defendant in the possession of a handgun matching the description of the murder weapon, close in time to the commission of the offense, was "direct, relevant evidence of his commission of [the] offense." *Hall*, 433 Mich at 580-581. This evidence tended to establish that defendant had access to the weapon used in the murder. As this evidence was properly admitted, defendant cannot establish plain error necessitating relief.

However, the trial court improperly admitted a 2009 photograph depicting defendant holding a handgun. The evidence was offered for the improper purpose of establishing that defendant was prone to carry and use guns. Although a person's propensity to carry guns would certainly be relevant to establish his guilt, MRE 404(b) protects against this type of implication. And this evidence was overly prejudicial.

Pursuant to *VanderVliet*, 444 Mich at 75, before other acts evidence may be admitted, the trial court must consider "whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts

appropriate for making decision of this kind under [MRE] 403." (Quotation marks and citation omitted.) "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford,* 458 Mich 376, 398; 582 NW2d 785 (1998). Our Supreme Court provided an illustrative list of considerations when determining whether evidence is unfairly prejudicial, including "the temporal proximity of the other acts evidence to the charged crime" and "the lack of reliability of the evidence supporting the occurrence of the other acts." *People v Watkins,* 491 Mich 450, 487-488; 818 NW2d 296 (2012).

The subject photograph was taken years before the crimes at issue, when defendant was only 15 years old. Accordingly, there is no "temporal proximity" between the evidence and the offense. Although the weapon in the photograph appears to be a handgun, no evidence supports any other similarity to the murder weapon. In fact, there is no way to determine whether the weapon in the photograph is even real, rather than fake. Accordingly, the photograph was irrelevant to prove that defendant actually possessed the murder weapon. Moreover, the photograph depicts defendant aiming the weapon at the photographer in a mock menacing fashion, placing him in an extremely negative light. Therefore, even if the evidence was otherwise admissible, it would be unduly prejudicial and the trial court abused its discretion in admitting it.

However, reversal is not warranted when a trial error is harmless. *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999); *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). Here, overwhelming evidence supported defendant's guilt beyond a reasonable doubt. The prosecution presented eyewitness testimony and DNA evidence placing defendant at the scene of the crime. Defendant's cellular telephone records also placed him in the area that night. Jones described the night's events in detail, including defendant's murder of DeWolf and defendant's proffered explanation for his actions. Accordingly, defendant is not entitled to relief.

IV. CRUEL AND UNUSUAL PUNISHMENT

The trial court sentenced defendant to life imprisonment without the possibility of parole for his felony murder conviction. Defendant contends that this sentence violated his right to be free from cruel and unusual punishment and to due process of law given his young age at the time he committed his offenses. We review such unpreserved constitutional claims for plain error. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013).

Looking to the binding precedent in this area, defendant's claim is meritless. "[M]andatory life without parole for those *under the age of 18* at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller v Alabama*, ___ US ___; 132 S Ct 2455, 2460; 183 L Ed 2d 407 (2012) (emphasis added). Defendant was almost 21 years old at the time of his offenses. As defendant does not fall within the protected class described in *Miller*, its analysis is inapplicable. *Id.* Defendant also cannot look to Michigan law for protection. Michigan codified *Miller*'s individualized sentencing requirement in MCL 769.25, but the statute also only applies to those defendants who were under the age of 18 when they committed their crimes. And the Legislature mandated the sentence of life without the possibility of parole for adult offenders who commit the crime of felony murder. MCL 750.316(1). "Legislatively mandated sentences are presumptively proportional and

presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "[A] proportionate sentence does not constitute cruel or unusual punishment." *People v Drohan*, 264 Mich App 77, 92; 689 NW2d 750 (2004).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood